**24MA-CC00043**

## IN THE CIRCUIT COURT OF MACON COUNTY, MISSOURI
## CIVIL DIVISION

| | | |
|---|---|---|
| **JENNIFER BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **CONAGRA FOODS PACKAGED** | ) | **REQUEST FOR JURY TRIAL** |
| **FOODS, LLC,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

SERVE:     Registered Agent: C T Corporation System
               120 South Central Avenue
               Clayton, Missouri 63105

### PETITION FOR DAMAGES

COMES NOW Plaintiff Jennifer Brown, by and through undersigned counsel, and for her claims against Defendant ConAgra Foods Packaged Foods, LLC ("Defendant"), states as follows:

1.     Plaintiff Jennifer Brown ("Plaintiff") is a resident of the State of Missouri.

2.     Defendant is a Delaware limited-liability company which is registered and doing business in Missouri.

3.     Defendant can be served through its Registered Agent, C T Corporation System, 120 South Central Avenue, Clayton, Missouri 63105.

4.     This case involves three intentional torts:

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

    a. Discrimination based on disability, in violation of the Missouri Human Rights Act;

    b. Discrimination based on disability, in violation of the Americans with Disabilities Act; and

    c. Retaliation for exercising rights pursuant to the Family Medical Leave Act.

5.    Plaintiff accepted Defendant's offer of employment at Defendant's facility in Macon County, Missouri.

6.    Defendant took adverse employment actions towards Plaintiff at Defendant's facility in Macon, Macon County, Missouri.

7.    These facts make jurisdiction and venue of this case proper in Macon County, Missouri and in this Court.

8.    Defendant employs more than six people and is an "employer" within the meaning of the Missouri Human Rights Act, R.S.Mo. § 213.010.8.

9.    Defendant engages in industry that affects interstate commerce, in that it manufactures, sells, and transports products to customers throughout the United States using instrumentalities of interstate commerce, and such items are sold to customers in multiple states.

10.    Defendant employed more than 15 employees for each working day during 20 or more calendar work weeks in 2022, 2023, and does so currently.

11.    Thus, Defendant is an "employer" subject to the Americans with Disabilities Act as Amended, 42, U.S.C. § 12101 *et seq*.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

12.     Defendant employed fifty or more employees for each working day during twenty or more calendar workweeks in 2022, 2023, and does so currently.

13.     Thus, Defendant is an "employer" subject to the Family Medical Leave Act, 29 U.S.C. § 2611.

## FACTS COMMON TO ALL COUNTS

14.     Plaintiff began working at Defendant's Macon, Missouri facility on or about November 16, 2020.

15.     Plaintiff was hired and worked as a Production Supervisor on the night shift.

16.     Plaintiff was suspended without pay on or about February 17, 2023.

17.     Plaintiff was ultimately discharged from employment on or about February 24, 2023.

18.     At the time of Plaintiff's discharge, Plaintiff was responsible for caring for her minor son, who underwent surgery that included the installation of a Vertebral Body Tethering System to correct his progressive idiopathic scoliosis.

19.     On or about October 13, 2022, Plaintiff's son's doctor informed Plaintiff that her son was being referred to an orthopedic surgeon in Columbia, Missouri for further diagnosis and treatment of severe scoliosis.

20.     On or about October 14, 2022, Plaintiff informed her Manager, John Miller, of the news regarding Plaintiff's son's diagnosis and referral.

21.     Miller advised Plaintiff to relay this information to Defendant's Health and Safety Manager, Julie Mills.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

22.    Plaintiff emailed Mills to schedule a meeting, which took place on October 17, 2022.

23.    At this meeting, Plaintiff informed Mills that Plaintiff's son had been referred to an orthopedic specialist in Columbia, Missouri for treatment of his scoliosis.

24.    Plaintiff included that she would have to take some time off to care for Plaintiff's son including time off to travel to Columbia for medical care and appointments.

25.    Plaintiff explained that she did not yet have all the details regarding frequency of treatment visits but would update Mills as soon as Plaintiff had more information.

26.    Plaintiff also informed Defendant that the first appointment with the orthopedic specialist was set for October 24, 2022.

27.    Plaintiff explained that she would need the day off to take her son to that appointment.

28.    Mills approved Plaintiff's request to take October 24, 2022 off.

29.    Mills also directed Plaintiff to update Mills as soon as possible regarding the future of Plaintiff's son's treatment.

30.    On October 24, 2022, Plaintiff took her son to his scheduled appointment with the orthopedic specialist.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

31.    The physician determined that Plaintiff's son was a candidate for Vertebral Body Tethering System, a surgical procedure that could help straighten his spine.

32.    The doctor explained that it was important to do the surgery as soon as possible, so surgery was scheduled for November 18, 2022.

33.    The doctor also informed Plaintiff that, following the surgery, Plaintiff's son would require around-the-clock care and assistance for a period of up to six weeks.

34.    Following the appointment on October 24, 2022, Plaintiff provided the information to Mills.

35.    Plaintiff also explained to Mills that the doctor wanted to do the surgery as soon as possible.

36.    Plaintiff requested to set up another in-person meeting with Mills to discuss the details of the situation moving forward.

37.    On or about November 7, 2022, Plaintiff met with Mills in Mills's office.

38.    Plaintiff reiterated the details of her son's diagnosis, the doctor's desire to do surgery as soon as possible, the scheduled surgery date, and the anticipated leave of absence Plaintiff would require to care for her son following the operation.

39.    Mills informed Plaintiff that Plaintiff could take leave pursuant to the Family Medical Leave Act.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

40.    Mills provided that taking leave pursuant to FMLA would protect Plaintiff's job while Plaintiff cared for her son.

41.    Mills printed off information regarding FMLA and assisted Plaintiff with completing the FMLA documentation.

42.    Mills also printed off the FMLA Healthcare Certification for Plaintiff to provide to her son's physician.

43.    Mills instructed Plaintiff to take the paperwork to Plaintiff's son's next doctor's appointment and that the physician was to complete the document.

44.    Mills was adamant, repeating herself at least twice, that Plaintiff was to bring the paperwork back to Mills, personally, and that Mills would take the next steps.

45.    Mills told Plaintiff that Mills would forward Plaintiff's completed paperwork to Sedgwick.

46.    Plaintiff replied that she would do as Mills instructed.

47.    Plaintiff then asked Mills about compensation during Plaintiff's period of absence.

48.    Mills responded that she was unsure and would need to speak with Defendant's Human Resources Manager, Donna Thomas.

49.    Plaintiff then asked Mills if Plaintiff would be allowed to return earlier than the anticipated return date if Plaintiff's son's recovery permitted.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

50.    Mills responded that Plaintiff could return early, but that Plaintiff would need to communicate her early return with John Miller, the Production Manager on Plaintiff's shift and Plaintiff's direct supervisor.

51.    Mills explained that Plaintiff would need to discuss her return with Miller because he was most directly impacted by Plaintiff's absence and return.

52.    Plaintiff then shifted the conversation back to Plaintiff's compensation during her anticipated leave of absence.

53.    This time, Mills informed Plaintiff that Mills did not believe that Plaintiff would be paid her salary during the leave of absence.

54.    Plaintiff explained to Mills that she could not afford to continue to pay her bills for that long without a paycheck.

55.    Plaintiff suggested that she could work on some projects from home.

56.    Plaintiff also suggested that she could potentially work part time by coming in and working for a couple of hours after her son fell asleep each night which would allow her to work part of her normally scheduled night shift hours.

57.    Plaintiff also informed Mills that she could also be available for Manager Meetings during her leave of absence.

58.    Plaintiff reasoned that attending the meetings would also help Plaintiff to stay abreast of happenings in the facility.

59.    Mills explained that she believed that Defendant may be able to work with one or more of those arrangements.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

60.    Mills reasoned to Plaintiff that the fact that she lived across the street from Defendant's Macon facility made the potential part-time work doable.

61.    Mills informed Plaintiff that the decision to let her work part-time hours and some from home would be made by Defendant's human resources representative, Donna Thomas, and Plaintiff's supervisor, Miller.

62.    Mills then called Thomas, who joined Plaintiff and Mills in Mills's office.

63.    Once Thomas was in the office, Mills spent a few minutes catching Thomas up on Plaintiff's situation.

64.    Mills then asked Thomas if Plaintiff would receive her salary payments while Plaintiff was on the anticipated leave of absence.

65.    Thomas explained that she was not sure and would need to ask Thomas's supervisor, and she left the office to inquire.

66.    When Thomas returned, she explained that the type of leave discussed would be leave without pay.

67.    At that point, Mills began making suggestions to Thomas on how to get Plaintiff some hours during the leave of absence.

68.    Mills reiterated Plaintiff's suggestions for part-time work, work from home, and coming in for manager meetings.

69.    Thomas agreed that an arrangement like this would be possible but explained that her number one priority was Plaintiff's son's recovery.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

70.     Thomas suggested that Plaintiff could start working an accommodated schedule as soon as her son's recovery permitted.

71.     Thomas then provided additional suggestions for an accommodated schedule that Plaintiff could potentially work *during* Plaintiff's leave of absence.

72.     Thomas suggested that because Plaintiff lived so close, Plaintiff could use her lunch break to go to her house and check on her son.

73.     Thomas also included that Plaintiff could extend her lunch break if necessary.

74.     Additionally, Thomas said that Plaintiff could take short breaks toward the beginning and end of Plaintiff's shifts to check on Plaintiff's son.

75.     Thomas also informed Plaintiff that Plaintiff could return to her normal shift *as soon as* her son's recovery permitted.

76.     Mills agreed with Thomas's plan and told Plaintiff that Defendant wanted to help in any way possible.

77.     Mills then informed Plaintiff that any modified schedule arrangement would ultimately need to be approved by Miller.

78.     Plaintiff said "okay."

79.     Mills then summoned Miller to join the meeting and Miller joined the meeting.

80.     Mills and Thomas filled Miller in on the previous discussion regarding Plaintiff's anticipated leave and the plan moving forward.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

81.    Mills and Thomas explained the situation just as had been discussed before Miller had arrived.

82.    Mills informed Miller that Plaintiff's return to work and her accommodated schedule would ultimately be Miller's decision.

83.    Mills reasoned that Miller would be the one most affected by Plaintiff's absence and modified schedule.

84.    Miller agreed with the plan and began providing some ground rules.

85.    Miller informed the group that Plaintiff's communication with him was of the utmost importance.

86.    Miller explained that he wanted a reminder of Plaintiff's leave approximately one week before Plaintiff's last day.

87.    Miller explained that once Plaintiff returned, Plaintiff needed to communicate with Miller every time Plaintiff left to go home as well as when Plaintiff returned to work.

88.    Everyone at the meeting agreed to the terms of Plaintiff's leave as they have been described here.

89.    The meeting was then concluded.

90.    No one at the meeting, including Thomas, ever mentioned that Plaintiff's request for FMLA should be a request for intermittent FMLA.

91.    No one at the meeting, including Thomas, ever directed Plaintiff to complete paperwork requesting intermittent FMLA.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

92.    Defendant never informed Plaintiff that if Plaintiff did return to work early that Plaintiff's FMLA-approved leave would no longer be in force.

93.    Defendant never informed Plaintiff that Plaintiff needed intermittent FMLA upon her return and in order to work the accommodated schedule suggested by Defendant's Human Resources department.

94.    Additionally, Mills never provided paperwork regarding a request for Intermittent FMLA when Plaintiff did return.

95.    Plaintiff's son's operation was originally scheduled for November 18, 2022.

96.    In November, Plaintiff received notice that her medical insurance was denying coverage for her son's surgical procedure.

97.    Plaintiff appealed the decision, and on or about December 28, 2022, the surgery was approved by the insurance provider.

98.    Plaintiff's son's surgery was scheduled for January 17, 2023.

99.    Because of the delay caused by the initial insurance denial, Plaintiff's FMLA leave was adjusted to Plaintiff's son's new surgery date, January 17, 2023.

100.    Plaintiff's return date was also adjusted to the anticipated return date of March 1, 2023.

101.    On January 10, 2023, Plaintiff notified Miller that her leave of absence was starting on January 17, 2023, as she had been directed.

102.    On January 16, 2023, the day before Plaintiff's leave began, Miller began, cordially, asking questions about Plaintiff's son's surgery.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

103.    During this conversation, Plaintiff informed Miller that the surgery was scheduled for 5 a.m. the following morning in Columbia, Missouri.

104.    Upon learning this information, Miller told Plaintiff to end her shift that night at 9 p.m.

105.    Miller reasoned that Plaintiff should take off early that night so that Plaintiff could get a good night's rest given that Plaintiff had to drive an hour and the surgery was to begin at 5 am.

106.    Plaintiff thanked Miller and did as she was instructed, leaving at approximately 9 p.m. on January 16, 2023.

107.    On January 17, 2023, Plaintiff's son underwent surgery in Columbia, Missouri.

108.    Following surgery, Plaintiff stayed home pursuant to her approved FMLA leave that began on January 17, 2023.

109.    Pursuant to the FMLA leave, Plaintiff's return to work date was scheduled for March 1, 2023.

110.    Plaintiff's son's recovery progressed much more rapidly than the doctor had anticipated.

111.    Approximately 3 weeks post-operation, Plaintiff's son was cleared to return to school which meant that he no longer required around-the-clock care.

112.    In or about the week of February 6, 2023, Plaintiff informed Defendant of her son's recovery and the doctor's clearance for her son to return to school as she was instructed to do.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

113.    Plaintiff, as she had been instructed to do, notified Miller that Plaintiff would be able to return to work earlier than expected.

114.    Miller communicated to Plaintiff that she could return to work early.

115.    Plaintiff returned to work on or about February 13, 2023.

116.    On February 13, 2023, Plaintiff began working the accommodated schedule that was agreed upon in the November 7, 2022, meeting.

117.    Plaintiff did exactly as she had been directed to do by Defendant in the November 7, 2022, meeting.

118.    Pursuant to Defendant's accommodated schedule, Plaintiff used her lunch break to check on her son during.

119.    Pursuant to Defendant's direction, Plaintiff took one short break at the beginnings and ends of her shifts, when necessary, to check on her son.

120.    When possible, Plaintiff would call home to check on her son in lieu of leaving the facility to go home and check on him.

121.    Pursuant to Defendant's direction, Plaintiff informed Miller every time Plaintiff left the facility and upon her return.

122.    Plaintiff informed Miller every time Plaintiff needed to take a break to make a call home to check on her son.

123.    Plaintiff estimates that she needed and used approximately 30 additional minutes of break time per shift beyond what was normally allotted by Defendant.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

124.    Plaintiff worked the accommodated schedule, as she had been directed, for three days without incident.

125.    On or about February 16, 2023, Plaintiff arrived at work and received a call from Defendant's Human Resources Generalist, Amber Fiedler.

126.    Fiedler requested that Plaintiff come to work the following day an hour early so that Plaintiff could have a meeting with the Plant Manager, Brian Grey.

127.    Plaintiff agreed and ended the phone call.

128.    Alarmed at the oddity, Plaintiff then called Miller and asked him if he knew anything about the meeting.

129.    Miller replied that he did not know anything about the meeting.

130.    On or about February 17, 2023, Plaintiff arrived at work an hour early and met Grey in his office.

131.    Plaintiff arrived at Grey's office and was informed that Defendant's head of Corporate Human Resources, Christina Keiser, was present on speaker phone.

132.    Grey began by alleging that Plaintiff's attendance had not been consistent in the months of January and February.

133.    Grey then alleged that Plaintiff's had absences during these months that were not approved.

134.    At that point Keiser took control of the conversation.

135.    Keiser said that "based on this information," Plaintiff was being discharged.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

136.    Plaintiff replied that she did not understand what Keiser and Grey meant by Plaintiff's time away from work had not been approved.

137.    Plaintiff explained that her request for a leave of absence pursuant to FMLA had been approved.

138.    Plaintiff provided that the leave of absence was approved from January 17, 2023 through February 28, 2023.

139.    Plaintiff told Grey, Kaiser, and Fiedler about the meeting with Mills, Thomas, and Miller on November 7, 2022.

140.    Plaintiff also relayed what Plaintiff had been instructed to do regarding her leave of absence, her return to work, and the accommodated schedule provided by Defendant.

141.    Plaintiff explained that she had discussed with Defendant the possibility of an early return.

142.    Plaintiff explained that her early return to work was approved by Mills, Thomas, and Miller.

143.    Plaintiff explained that she had been working the accommodated scheduled as it had been presented by Defendant at the November 7, 2022, meeting.

144.    Keiser replied that she was not aware that Plaintiff had gone on an approved leave of absence.

145.    Keiser then asked Grey if he was aware of the approved leave of absence.

146.    Grey replied, "No, this is the first I am hearing of it."

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

147. Kaiser replied that the information Plaintiff had provided changed things.

148. Keiser then said that, instead of terminating Plaintiff, Defendant was suspending Plaintiff without pay while Defendant investigated the matter.

149. Keiser said that Defendant would call Plaintiff in a few days with Defendant's final decision.

150. Keiser added that if Plaintiff had any questions that Plaintiff could message Keiser.

151. Plaintiff was then escorted out of the building.

152. On or about February 22, 2023, Plaintiff had a phone conversation with Keiser.

153. Plaintiff asked Keiser for a status update regarding the suspension and her return to work.

154. Plaintiff explained, again, that Thomas, Mills, and Miller came up with the accommodated schedule at the November 7, 2022, meeting.

155. Plaintiff continued by reiterating that she had been working the approved schedule since her return from leave on February 13, 2023.

156. Plaintiff explained she followed the instructions she was given regarding working the accommodated schedule including consistent communication with Miller.

157. Keiser replied, simply, that Miller did not have the authority to let Plaintiff "do that."

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

158.     Plaintiff explained that Plaintiff worked on the night shift.

159.     Plaintiff explained that Miller was the only member of management present during her night shifts.

160.     Plaintiff also explained that Miller's input and directives for Plaintiff working the accommodated shifts were approved by Defendant at the November 7, 2022, meeting.

161.     Plaintiff also explained that during the November 7, 2022 meeting that the accommodated schedule conceived of by Defendant even had to be *approved by Miller.*

162.     Keiser finished the conversation by informing Plaintiff that the investigation was still ongoing.

163.     Keiser concluded that Defendant would provide an answer as soon as possible.

164.     On or about February 24, 2023, Plaintiff received a call from Keiser.

165.     Keiser informed Plaintiff that Defendant was moving forward with Plaintiff's discharge.

166.     Keiser explained that Plaintiff's FMLA had been denied and therefore Plaintiff's time away from Defendant's facility was not approved.

167.     Plaintiff attempted to respond to this statement, but Keiser responded, cutting Plaintiff off, that Defendant's decision was final.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

168.    All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

169.    The conduct of Defendant, as set forth above, was done with evil motive or in reckless disregard for the rights of Plaintiff.

170.    On or about August 15, 2023, Plaintiff duly filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights alleging that Defendant engaged in discriminatory actions, in violation of the Human Rights Act, R.S.Mo. § 213.010 *et seq* and the American's with Disabilities Act, that are being raised in this lawsuit, or alternatively, all conduct alleged herein would have arisen from the investigation of such Charge of Discrimination.

171.    A Notice of Right-to-Sue letter dated February 25, 2024, has been issued and this action is being brought within ninety (90) days from the issuance of such Right-to-Sue letter from the Missouri Commission on Human Rights.

172.    A Notice of Right-to-Sue letter dated March 6, 2024, has been issued and this action is being brought within ninety (90) days from the issuance of such Right-to-Sue letter from the Equal Employment Opportunity Commission.

173.    Plaintiff has fulfilled all conditions precedent to the bringing of these claims under the Missouri Human Rights Act and the American's with Disability Act and has duly exhausted all administrative procedures prior to instituting this lawsuit in accordance with the law.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

174.   As a direct and proximate result of Defendant's unlawful conduct, including wrongfully discharging Plaintiff's employment, Plaintiff has suffered irreparable injury, including past and future pecuniary issues, loss of employment opportunities, emotional pain, suffering, humiliation, inconvenience, mental anguish, and loss of enjoyment of life, and will continue to suffer the same unless and until this Court grants relief.

### COUNT I — DISABILITY DISCRIMINATION IN VIOLATION OF THE MISSOURI HUMAN RIGHTS ACT, R.S.Mo. § 213.010 et seq.

175.   Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 174 of her Petition, as though fully stated herein.

176.   Plaintiff's minor son suffers from physical impairments.

177.   These physical impairments limit the boy from life activities, including standing, ambulating, and participating in activities without pain; and attending school.

178.   Plaintiff's minor son has a disability, scoliosis, as defined by the Missouri Human Rights Act, 213.010(5) R.S.Mo.

179.   As Plaintiff's mother and caregiver, Plaintiff is associated with someone protected by the Missouri Human Rights Act pursuant to § 213.070 R.S.Mo.

180.   Defendant took adverse actions against Plaintiff, including but not limited to accusing Plaintiff of absenteeism for employer-approved time off to care for her disabled son; disciplining Plaintiff for absenteeism despite employer-approved time off so Plaintiff could care for her disabled son; suspending Plaintiff

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

without pay for taking employer-approved time off to care for her disabled son; and discharging her from employment for taking approved time off to care for her son.

181.	A/The motivating factor in these adverse actions was Plaintiff's association with her disabled son.

182.	As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

183.	The conduct of Defendant, as set forth above, was intentionally harmful to the Plaintiff and done without just cause.

184.	Additionally, the conduct of Defendant, as set forth above, was done with evil motive.

185.	Plaintiff is also entitled to recover all of costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in an amount exceeding $75,000.00; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; and for such other and further consideration and relief as the Court may deem just and equitable.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

**COUNT II – ASSOCIATION DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AS AMENDED, 42 U.S.C. § 12101 *et seq.***

186.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 185 of her Petition, as though fully stated herein.

187.     Plaintiff's minor son suffers from physical impairments.

188.     These physical impairments substantially limited one or more of Plaintiff's son's major life activities, including standing, ambulating, and participating in activities without pain; and attending school.

189.     Plaintiff's minor son has a disability, scoliosis, as defined by the 42 U.S.C. § 12102(1).

190.     Because of Plaintiff's close familial relationship with her son as his mother and caregiver, Plaintiff is associated with someone protected by the Americans with Disabilities Act as Amended pursuant to 42 U.S.C. § 12112(b)(4).

191.     Defendant knew at the time that Plaintiff had a son with a disability.

192.     Defendant took adverse actions against Plaintiff, including but not limited to accusing Plaintiff of absenteeism for employer-approved time off to care for her disabled son; disciplining Plaintiff for absenteeism despite employer-approved time off so Plaintiff could care for her disabled son; suspending Plaintiff without pay for taking employer-approved time off to care for her disabled son; and discharging her from employment for taking approved time off to care for her son.

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

193.    A/The motivating factor in these adverse actions was Plaintiff's association with her disabled son.

194.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

195.    The conduct of Defendant, as set forth above, was intentionally harmful to the Plaintiff and done without just cause.

196.    Additionally, the conduct of Defendant, as set forth above, was done with evil motive.

197.    Plaintiff is also entitled to recover all of costs, expenses, expert witness fees, and attorneys' fees incurred in this matter.

WHEREFORE, Plaintiff prays for judgment against Defendant for compensatory damages in an amount exceeding $75,000.00; for Plaintiff's costs and expenses incurred herein; for attorneys' fees; and for such other and further consideration and relief as the Court may deem just and equitable.

## COUNT III – RETALIATION BASED ON EXERCISE OF RIGHTS GRANTED BY THE FAMILY MEDICAL LEAVE ACT, IN VIOLATION OF 29 U.S.C. § 2615 *et seq*.

198.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 197 of her Petition, as though fully stated herein.

199.    Plaintiff engaged in activity provided by and protected by the

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

FMLA.

200.    This activity included requesting FMLA leave and using FMLA leave.

201.    Plaintiff's request for leave pursuant to FMLA was legitimate, as evidenced by the approval of the leave by Defendant following the medical provider's certification.

202.    Defendant took adverse actions against Plaintiff.

203.    These actions included, but are not limited, to accusing Plaintiff of absenteeism for time taken off pursuant to her approved, FMLA leave; disciplining Plaintiff for absenteeism for time taken off pursuant to her approved, FMLA leave; suspending Plaintiff without pay for taking FMLA leave; and discharging her from employment.

204.    These actions were motivated by Plaintiff's exercise of rights granted by FMLA and Plaintiff's engaging in activity protected by FMLA.

205.    As a direct and proximate result of Defendant's unlawful conduct outlined above, including wrongfully discharging Plaintiff from employment and refusing to rehire Plaintiff, Plaintiff has suffered irreparable injury, including monetary loss, lost salary and wages, lost employment benefits, and other compensation, as well as interest on these amounts calculated at the prevailing rate.

206.    Defendant's actions were not performed in good faith nor based on any reasonable grounds, entitling Plaintiff to an additional award of liquidated

Electronically Filed - MACON - May 24, 2024 - 02:45 PM

damages.

207.    Plaintiff is also entitled to recover her reasonable attorneys' fees, reasonable expert witness fees, and other costs of this action from Defendant.

WHEREFORE, the Plaintiff prays for judgment against the above-named Defendant for all damages allowable by law, for interest as allowed by law, for the costs of this action, for his attorneys' fees, and for such other and further consideration and relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury in the Circuit Court of Macon County, Missouri on all accounts and allegations of wrongful conduct alleged in this Petition.

Respectfully submitted,

 */s/ Noah D. Ballard*
Daniel L. Doyle, MO Bar No. 37305
Robert A. Bruce, MO Bar No. 69985
Noah D. Ballard, MO Bar No. 69953
DOYLE & BRUCE LLC
748 Ann Avenue
Kansas City, Kansas 66101
Telephone: (913) 543-8558
Facsimile: (913) 543-3888
dan@kclaw.com
robert@kclaw.con
noah@kclaw.com
ATTORNEYS FOR PLAINTIFF